No. 15-4322

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

MICHAEL T. RAND,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of North Carolina, No. 3:10-cr-182
Before the Honorable Robert J. Conrad, Jr.

## DEFENDANT-APPELLANT'S REPLY IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL

STEPHEN D. COUNCILL
ROGERS & HARDIN LLP
229 Peachtree Street NE
2700 International Tower
Atlanta, GA  30303
(404) 522-4700

CLAIRE J. RAUSCHER
WOMBLE CARLYLE SANDRIDGE
  AND RICE LLP
One Wells Fargo Center
301 South College Street, Suite 3500
Charlotte, NC  28202
(704) 331-4961

SETH P. WAXMAN
BRENT J. GURNEY
JEANNIE S. RHEE
KELLY P. DUNBAR
DANIEL AGUILAR
MATTHEW GUARNIERI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

June 15, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

REQUEST FOR ORAL ARGUMENT .................................................1

ARGUMENT .........................................................................................1

I.      NO RISK OF FLIGHT ................................................................1

II.     FALSE EMAIL DELETIONS ......................................................2

        A.      Rand's State Of Mind.......................................................2

        B.      Cross-Examination Of Key Witnesses..............................7

        C.      Exclusion Of False Deletion Evidence Was Not Harmless ..................8

III.    PROSECUTORIAL MISCONDUCT AT SUMMATION ............9

CONCLUSION ...................................................................................10

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Crane v. Kentucky*, 476 U.S. 683 (1986) ........................................................3, 6, 7

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ..........................................1

*United States v. Azubike*, 504 F.3d 30 (1st Cir. 2007) ...............................................9

*United States v. Farinella*, 558 F.3d 695 (7th Cir. 2009) ..........................................9

*United States v. Foster*, 982 F.2d 551 (D.C. Cir. 1993) ............................................6

*United States v. Francis*, 82 F.3d 77 (4th Cir. 1996)................................................10

*United States v. Green*, 305 F.3d 422 (6th Cir. 2002) ................................................9

## STATUTES AND RULES

18 U.S.C.
      § 3143(a)(1) ......................................................................................................1
      § 3143(b)(1) ......................................................................................................1

Fed. R. App. P. 27(e) ......................................................................................................1

## OTHER AUTHORITIES

Gohara, Miriam S., *A Lie For A Lie*, 33 Fordham Urb. L.J. 791 (2006)..................3

Kassin, Saul M., *et al.*, *Police-Induced Confessions: Risk Factors and Recommendations*, 34 Law & Hum. Behav. 3 (2010).....................................3

*Weinstein's Federal Evidence* (2d ed. 2015) ............................................................6

## REQUEST FOR ORAL ARGUMENT

In light of the government's opposition, which misstates important points of law and fact, Rand respectfully requests that the Court hear oral argument on his motion for release pending appeal.  Fed. R. App. P. 27(e).

## ARGUMENT

When the conditions in 18 U.S.C. § 3143(b)(1) are satisfied, a defendant has a "mandatory" "right" to release pending appeal.  *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).  Rand readily satisfies those standards.

## I.    NO RISK OF FLIGHT

Although the government "agrees" Rand "is not a danger to the community and that his appeal is not for the purposes of delay," it insists Rand has failed to show "he is not a flight risk."  Opp. 12.  That argument is meritless.

In seeking to have Rand detained after sentencing, the government argued he is a flight risk based on the same threadbare grounds it asserts here.  Opp. 12; A180-A182.[1]  The court rejected those arguments and permitted Rand to self-surrender (A183-A184), necessarily finding Rand is not a flight risk, *see* 18 U.S.C. § 3143(a)(1) (release pending "execution of sentence").  The court was persuaded that Rand "lives for the day when he can come back and see" his children and that

---

[1]      The government's claim (Opp. 12) that Rand has "access to substantial funds" is wrong.  Rand has been essentially bankrupted by legal proceedings.

he would not jeopardize that chance by fleeing.  Mot. 12 n.4.[2]

## II.   FALSE EMAIL DELETIONS

Rand's appeal will present a substantial question as to whether the trial court's exclusion of any evidence or argument about the false March 23-28 email deletions deprived Rand of his constitutional right to defend himself by fettering Rand's ability to explain his state of mind during his "confession" and by vitiating Rand's ability to cross-examine key witness.  Mot. 13-19.

### A.   Rand's State Of Mind

When Rand spoke to the FBI and supposedly "confessed," he did so under the heavy weight of false accusations of ironclad forensic evidence showing that, in the week immediately after the issuance of a grand jury subpoena, from March 23-28, Rand deleted thousands of emails responsive to the subpoena that also incriminated Rand in accounting fraud.  Mot. 10-11.  That Rand made his statements to the FBI in the face of these false charges based on supposed forensic evidence was central to evaluating Rand's confessional statements.

It is well-established that *false* evidence—particularly purported scientific

---

[2]     Other facts support that finding.  Rand has complied with his conditions of release for years, even when threatened with life imprisonment.  A182.  The court granted Rand permission to travel out of state eight times.  Dkts. 45, 169, 192, 203, 227, 310, 359, 364.  And Rand wears an ankle-monitoring bracelet and has surrendered his passport as a condition of bail.  Dkt. 135, at 2-3.

evidence—can weigh substantially on an innocent person.[3]  The trial court's failure to permit Rand to testify about the *false* evidence of supposed email deletions immediately following the grand jury subpoena was constitutional error:  It "stripped" Rand of "the power to describe to the jury the circumstances that prompted" his alleged confession, "disabl[ing] [him] from answering the one question every rational juror needs answered:  If the defendant is innocent, why did he previously admit his guilt?" *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

Without citing, much less addressing *Crane*, the government makes three responsive points.  None is persuasive.  ***First***, the government argues the trial court ruled that Rand "could testify that he had been told the government could prove he made thousands of email deletions between March 23 and March 28 … and that this proffer caused him to feel desperate and to confess."  Opp. 14-15.  But that remedy would have made matters *worse* for Rand:  Permitting Rand to testify that he was accused of conduct that corroborated the prosecution's theory and that he then subsequently confessed implies guilt, not innocence.  Mot. 18.

---

[3]      *See* Kassin *et al.*, *Police-Induced Confessions: Risk Factors and Recommendations*, 34 Law & Hum. Behav. 3, 17 (2010) ("The forensic literature on confessions … indicat[es] that presentations of false evidence can lead people to confess to crimes they did not commit."); *accord* Gohara, *A Lie For A Lie*, 33 Fordham Urb. L.J. 791, 822 (2006).  For that reason, the truth or falsity of the allegations against Rand had *everything* "to do with [Rand's] state of mind at the time he confessed."  Opp. 16.

What the government's position and the trial court's rulings glaringly miss is that the *falsity* of the March 23-28 deletions was a critical piece of the evidentiary story necessary for Rand to explain fully, and coherently, his state of mind. The trial court emphatically forbid any testimony that the deletion evidence was "false": "There will be *no* testimony as to the ultimate disposition or the ultimate reality of whether the government did in fact have [the March 23-28 email deletion] evidence." A115 (emphasis added). The defense urged that Rand "should be entitled to say and explain and prove that the accusation was in fact false." A116. The court refused: "No. He will not do that in this trial." *Id.*[4]

**Second**, the government maintains the false email deletions were only a "sliver" of information presented to Rand that "turned out to be unreliable." Opp. 16; *see id.* 5. The government appears to believe that the false accusations—accusations that led to Rand being fired, that the government relied heavily on at a first trial and on which it secured a conviction, and that the government fought to prevent Rand from testing through his own forensic analysis—are much ado about nothing because Rand did, in fact, delete emails on March 30.

---

[4]    The suggestion (Opp. 15) that Rand's attorneys could have "argue[d] to the jury [that] the government's evidence" at trial did not include the March 23-28 emails ignores the court's wholesale exclusion of any testimony or arguments about the false deletions (A27-A28, A115).

But the differences between the March 23-28 deletions and the March 30 deletions are night and day. Rand has always maintained that the March 30 deletions were consistent with his habit of intermittently deleting emails in bulk by sender to manage his email account, and that he stopped doing so on March 30 as soon as he read a document retention notice circulated that day. A217. In contrast, prior to and during the proffer sessions, the government told Rand that it had irrefutable forensic proof that Rand had deleted thousands of emails starting the *same day* as the company's receipt of the grand jury subpoena and continuing for the entire *week*, suggesting a calculated and methodical effort to obstruct, not intermittent email maintenance.

Furthermore, the *contents* of the March 23-28 deletions differed materially from the March 30 deletions. The former involved high-level officials at the company discussing accounting issues. The government's false accusation that Rand deleted those emails was the connective tissue between its obstruction and accounting fraud charges; deleting *accounting* emails with the CFO or CEO was powerfully suggestive of an intent to cover-up *accounting* fraud. By comparison, the March 30 deletions were overwhelmingly innocuous, consisting of spam emails from Fidelity Investments, LiveAuctioneers, LoanShopUSA, and MarketWatch (A202, A217); "flirty emails" with friends (A196, A205-A206); emails with various people with the first name "Lisa" (A198); emails to a former coworker

- 5 -

(A204); unsent emails about "girls scout cookies" and "JCC softball" (A200); and emails from coworker Cory Boydston, hundreds of which Rand had never read (A208). Tellingly, the government does not dispute that it identified only 10 emails deleted on March 30 with *any* relevance to the grand jury investigation and that *none* of those 10 emails showed wrongdoing by Rand.[5]

At bottom, although the government may doubt that Rand was prompted to make false confessional statements based on the false email deletion accusations, the Constitution gives a defendant the right to tell his side of the story and to have a jury decide its credibility. *Crane*, 476 U.S. at 690-691.

**Finally**, the government is wrong (Opp. 15) that the district court "properly precluded the evidence pursuant to Rule 403." Rule 403 cannot be used to exclude evidence that is "essential," *United States v. Foster*, 982 F.2d 551, 555 (D.C. Cir. 1993), or "crucial," 2 *Weinstein's Federal Evidence* § 403.06[2] (2d ed. 2015). Evidence bearing on the credibility of and circumstances surrounding a confession is both—indeed, "a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its

---

[5]     The government argues (Opp. 7, 15) that it could have proven that Rand deleted approximately 800 emails from March 23-28, but it does not claim—as it did at the first trial—that any of these emails were to or from high-level personnel at Beazer, or that the deletions were at all suggestive of an intent to obstruct justice. In fact, more than 95% of those deletions (749 emails) were with two friends—or from JokesGalore.com.

credibility." *Crane*, 476 U.S. at 689.  Nor does the government explain why, in a case alleging a complex, multi-year accounting fraud involving reserve accounting and a sale-leaseback transaction, the jury would have been lost by learning that Rand's confession was prompted by false email deletion evidence.

### B.    Cross-Examination Of Key Witnesses

Independently, exclusion of any mention of the false March 23-28 deletions impermissibly vitiated Rand's ability to probe witness credibility, taint, and bias. Mot. 15-16.  The government asserts (Opp. 17 n.4) that Rand was permitted to cross-examine certain witnesses about their review of the first trial transcript. True, but irrelevant.  The defense could not ask *any* questions about the false deletions.  A62-A63.  Because those accusations had been lodged against Rand for years and were relied upon heavily by the government at the first trial, the defense was entitled to ask how the accusations affected witnesses' views of Rand.

The government also asserts (Opp. 17 n.4) that the false deletions were irrelevant to cross-examination of Beazer's outside counsel who conducted the June 26 interview because that interview "was based solely upon the [March 30] deletions."  That is false.  The contemporaneous memorandum of that interview identifies the moment Brown learned of the March 23-28 deletions.  That bombshell revelation caused Brown to re-start the interview:

> At this point, the interview concluded, but upon leaving the interview, A&B received information from Navigant that Rand's deletion of e-mails the week of March 23-30 included deletion of 1474 e-mails from Boydston, 705 from David Weiss, 1683 from Jim O'Leary, and 311 from Ian McCarthy. At A&B's request, Rand and his attorney agreed to resume the interview with Mike Brown and Christy Eikhoff.

A215. Based on the court's exclusionary ruling, that passage was redacted from the exhibit seen by the jury. The defense should have been able to cross-examine outside counsel about the false deletions—given the prominent role they played in the interview, which was the basis for one of the counts of conviction—to test both credibility and bias. Mot. 15-16.

### C.    Exclusion Of False Deletion Evidence Was Not Harmless

These erroneous evidentiary rulings—which were of a constitutional dimension—were hardly "harmless." Opp. 17. Although the government offers a self-interested view that the trial evidence of guilt was "overwhelming," a reasonable juror could have seen things differently. Mot. 8-9; Def. Objections to PSR, Dkt. 370 (contesting the government's selective interpretation of trial evidence). Here, the prejudice flowing from the erroneous rulings was substantial, and it struck at the core of Rand's ability to mount a full defense. Rand was stripped of the ability to explain meaningfully his confession (one mentioned a dozen times by the government during closing) and to cross-examine key witnesses about false accusations that went directly to witness taint, bias, and credibility.

- 8 -

III.  PROSECUTORIAL MISCONDUCT AT SUMMATION

Rand's appeal will also present a substantial question based on the prosecution's improper references during closing to wealth and to Rand's silence. Mot. 19-20.  The government's contrary arguments are unpersuasive.[6]

The government acknowledges (Opp. 20 n.5) that in the few minutes the prosecution had for rebuttal summation (A210), it discussed Rand's wealth *eight* times.  Its attempts to rationalize those comments now (Opp. 19) strain credulity. The government argues, for example, that the repeated gold references were a "response" (*id.* at 19) to defense counsel's passing reference to a "bag of gold" as an immaterial detail in retelling the parable of the emperor's new clothes.  The defense's use of "gold" had nothing to do with Rand's wealth, and the government was not free to use that same term in an entirely different way:  to incite class prejudice by painting Rand as wealthy man attempting to buy his way out of trouble.  *United States v. Farinella*, 558 F.3d 695, 700 (7th Cir. 2009).

The idea that these comments were about "expert witnesses" (Opp. 19) is

---

[6]     These objections are preserved.  *Cf.* Opp. 17.  The defense moved for a mistrial at the first opportunity after the government's rebuttal.  A172-A177. Neither the prosecution nor the court suggested the objections were too late. Indeed, "[a]lthough the objection was not made during rebuttal itself, the objection was made immediately thereafter," permitting the court to take corrective action before the jury had retired.  *United States v. Azubike*, 504 F.3d 30, 39 n.9 (1st Cir. 2007); *United States v. Green*, 305 F.3d 422, 430 (6th Cir. 2002).  The timing of the objections thus satisfied the purpose of the contemporaneous objection rule.  In any event, Rand would satisfy the plain error standard even if it applied.

fanciful.  The references to Rand being "rich" had nothing to do with experts and the repeated "gold" references went well beyond experts:  "It took a lot of gold.  A lot of gold.  The defendant's lawyers, all of them, his experts, a lot of gold." A165; *see* A170 (referencing "story that was bought with gold").

The government's denial that it commented on Rand's failure to testify is equally unavailing.  The government argues the prosecution was commenting on defense counsel's silence, not Rand's.  Opp. 10.  That is not how the comment would have been "naturally … take[n]."  *United States v. Francis*, 82 F.3d 77, 78 (4th Cir. 1996).  Early in the rebuttal summation, the prosecutor described "the defense" in this way:  "[t]he FBI is lying.  And I [Rand] lied to the FBI because I [Rand] was desperate."  A165.  The prosecutor returned to this point, explaining:

> But then he also said, but wait, I also lied to the FBI *because I was desperate*.  How those fit together I didn't understand, maybe you did.  So I heard that the FBI lied, I also heard that Mr. Rand lied because he was desperate.  *Why was he desperate?  He didn't say*.

A167 (emphases added).  In this context, in which the prosecutor during a short time repeatedly referred to *Rand's* theory as to why *Rand* was desperate, the jury would have naturally understood "Why was he desperate?  He didn't say" to be a reference to *Rand's* failure to testify.  Mot. 20.

## CONCLUSION

Rand poses no risk of flight, and his appeal will present substantial—close— questions.  Mot. 12.  The Court should order him released pending appeal.

- 10 -

Respectfully submitted.

/s/ Seth P. Waxman

STEPHEN D. COUNCILL                    SETH P. WAXMAN
ROGERS & HARDIN LLP                    BRENT J. GURNEY
229 Peachtree Street NE                JEANNIE S. RHEE
2700 International Tower                KELLY P. DUNBAR
Atlanta, GA  30303                     DANIEL AGUILAR
(404) 522-4700                         MATTHEW GUARNIERI
                                       WILMER CUTLER PICKERING
CLAIRE J. RAUSCHER                        HALE AND DORR LLP
WOMBLE CARLYLE SANDRIDGE                1875 Pennsylvania Avenue, NW
   AND RICE LLP                        Washington, DC  20006
One Wells Fargo Center                 (202) 663-6000
301 South College Street, Suite 3500
Charlotte, NC  28202
(704) 331-4961

June 15, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit via the CM/ECF system and served a copy on counsel of record by the CM/ECF system.

/s/ Seth P. Waxman
SETH P. WAXMAN